[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-16433

_____

D. C. Docket No. 01-02250-CV-T-30

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 28, 2003
THOMAS K. KAHN
CLERK

GRANITE STATE OUTDOOR
ADVERTISING, INC.,

Plaintiff-Appellant-
Cross-Appellee,

versus

CITY OF ST. PETERSBURG, FLORIDA,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 28 2003)

Before BLACK and FAY, Circuit Judges, and HUCK[*], District Judge.

BLACK, Circuit Judge:

_____

[*]Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

After its permit applications were denied, Granite State Outdoor Advertising, Inc. (Granite) filed suit seeking to compel the City of St. Petersburg (City) to allow Granite to erect six billboards inside the City's limits. We must decide whether the First Amendment requires a content-neutral municipal sign ordinance to expressly limit the amount of time a municipality may take to process a permit application. The district court found the complete absence of time limits necessitated the invalidation of the City's sign ordinance. On this issue alone, we reverse and hold time limits are not *per se* required. Accordingly, the City is entitled to summary judgment, and neither damages nor attorneys' fees are appropriate.

## I. BACKGROUND

Like many other municipalities, the City has an ordinance to regulate the appearance, location, and number of signs within its boundaries. ST. PETERSBURG, FLA., CODE §§ 16-666–713. In part, this sign ordinance restricts the placement of off-premise signs. An off-premise sign is defined as any sign that "identif[ies] or advertis[es] a product, business, person, activity, condition, or service not located or available on the same zone lot where the sign is installed and maintained." *Id.* § 16-666(16).

The sign ordinance regulates off-premise signs in several noteworthy ways. First, an off-premise sign is permitted only on a lot zoned commercial/industrial. *Id.* § 16-671(3). Second, an off-premise sign is permitted on a lot only if there are no other structures there. *Id.* § 16-710(1)(f)(1). Third, only one off-premise sign is permitted per lot. *Id.* Fourth, each off-premise sign must comply with the height, area, separation, and setback requirements set forth in the sign ordinance. *Id.* § 16-710(1)(f)(4)–(7). Finally, a sign permit is required. *Id.* § 16-692.

To obtain a sign permit, an applicant must submit a sign plan demonstrating that the proposed sign complies with the sign ordinance. *Id.* § 16-692(e). The ordinance, however, does not require the City to process an application within any certain amount of time.

Granite acquired signed lease agreements authorizing it to construct and operate billboard signs on six different parcels of real property within the City. Granite then applied to the City for the necessary sign permits. Seventeen days later, the City informed Granite all of its applications had been rejected because (1) other structures already existed on the lots, and (2) Granite failed to demonstrate compliance with the height, separation, and setback requirements. The City further informed Granite that one of its six applications also sought to erect an off-premise

3

sign on a lot zoned residential multifamily, and a second failed to demonstrate it met the minimum frontage requirement.

Granite did not administratively appeal the City's denial of its applications. Instead, Granite promptly filed suit claiming the sign ordinance was unconstitutional, both as-applied and facially.

After both parties moved for summary judgment, the district court entered its order, granting in part and denying in part both motions. The district court found (1) Granite's as-applied challenge failed; (2) several provisions of the sign ordinance were unconstitutional but severable;[1] (3) the sign ordinance's failure to specify any time limits gave City officials undue discretion, was nonseverable, and necessitated the invalidation of the remainder of the ordinance; and (4) Granite was not entitled to damages or attorneys' fees.

After the district court entered judgment for Granite, Granite demanded that the City immediately allow it to erect its six billboards. The City refused and filed a Motion for Clarification and Stay of the Order Pending Appeal. During the motion

_____

[1] After carefully scrutinizing the text of the entire sign ordinance, the district court invalidated and severed the following three provisions: (1) the provision prohibiting the display of political signs until 45 days or fewer before an election; (2) the provision limiting the maximum size of a free speech sign to four feet; and (3) the provision stating that signs may not be displayed on seawalls and piers unless they are approved by the City Manager. After severing these provisions, the district court found the remaining text to be constitutionally sound.

4

hearing, the district court stated it was neither requiring the City to issue permits nor ordering it to allow Granite to erect billboards. The district court issued a second written order granting a stay and adopting its oral clarification. The parties appeal and cross-appeal from these two orders.

## II. DISCUSSION

We affirm without discussion much of the result reached by the district court.[2] We reverse, however, with respect to whether time limits are required and hold they are not. We also briefly note that both damages and attorneys' fees are inappropriate.

### A. *Time Limits*

Granite argues that the lack of specific time limits confers excessive discretion on City officials, thereby potentially chilling speech before it occurs. The district court found the absence of time limits required it to grant summary judgment for Granite and invalidate the entire ordinance. We review the district court's grant of summary judgment *de novo*. *See Nat'l Fire Ins. Co. v. Fortune Constr. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

---

[2] In particular, we note our review of the record confirms the district court's finding that three provisions of the sign ordinance are invalid and severable. *See supra* note 1. Accordingly, whenever we refer to the sign ordinance, we mean the sign ordinance less these provisions.

We begin our analysis by summarizing the two Supreme Court cases that establish the extent to which specific procedural safeguards, such as time limits, are required.

In the first case, *Freedman v. Maryland*, 380 U.S. 51, 85 S. Ct. 734 (1965), the Supreme Court invalidated a content-based state law requiring motion pictures to obtain a license prior to release. *Id.* at 58, 85 S. Ct. at 738-39. The licensing board had the exclusive discretion to deny a license if it concluded a film was obscene. *Id.* The Court held such a restraint was only valid if the licensing scheme contained the following specific procedural safeguards:

> (1) any restraint prior to judicial review can be imposed only for a *specified brief period* during which the status quo must be maintained;
> (2) expeditious judicial review of that decision must be available; and
> (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227, 110 S. Ct. 596, 606 (1990) (citing *Freedman*, 380 U.S. at 58-60, 85 S. Ct. at 739-40) (emphasis added).

In the second case, *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 122 S. Ct. 775 (2002), the Court considered a content-neutral permitting scheme. *Id.* at 320-23, 122 S. Ct. at 778-80. Writing for a unanimous Court, Justice Scalia explained that having to obtain a permit to hold a public event in a park was quite different from the censorship at issue in *Freedman*. *See id*. (noting that the content-neutral

6

regulation of expression was not the type of "core abuse" against which the First Amendment was originally crafted to protect). Accordingly, the Court held the "extraordinary procedural safeguards" required in *Freedman* were inapplicable. *Id.* at 323-24, 122 S. Ct. at 780. In particular, even though the ordinance at issue required all permit applications to be processed in 28 days, the Court never stated time limits were *per se* required for a permitting scheme to be valid. *See id.* Rather, the Court simply held all that was required were "adequate standards to guide the official's decision and render it subject to judicial review." *Id.*

Clearly, whether *Freedman* or *Thomas* controls here depends on whether the City's sign ordinance is content-based or content-neutral. The government's objective in regulating speech is the controlling consideration. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753-54 (1987). More specifically, if the government's reasons for regulating speech have nothing to do with content, then the regulation is content-neutral. *Id.*; *see also Messer v. City of Douglasville*, 975 F.2d 1505, 1509 (11th Cir. 1992) (stressing that location-based regulation is not content-based regulation).

Here, the ordinance states on its face that it was enacted to (1) promote uniformity, (2) preserve aesthetics, and (3) foster safety. ST. PETERSBURG, FLA., CODE § 16-667(b)(2). In addition, our review of the record does not suggest the

7

sign ordinance discriminates impermissibly based on content.[3] Thus, we conclude the sign ordinance is content-neutral and *Thomas* controls.

Accordingly, we are simply required to assess whether the ordinance contains adequate standards to guide official decisionmaking. *See Thomas*, 534 U.S. at 323-24, 122 S. Ct. at 780. Reviewing the text of the sign ordinance again convinces us that it does. After all, City officials may not exercise unlimited discretion. They can only process permit applications based upon objective criteria set forth in the ordinance.[4] No official is able to reject an application simply because of the proposed content. Moreover, anyone adversely affected by the ordinance may resort to either administrative review or—as Granite has done—the courts.

We realize City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech. We will not, however, address hypothetical constitutional violations in the abstract. As the Supreme Court noted in *Thomas*, we believe "abuse must be dealt with if and when

---

[3] The City's sign examiner stated in an affidavit that she does not "review any wording or content" of a proposed sign, other than to "ascertain if it pertains to an on-premises commercial or non-commercial activity or an off-premises activity [and e]ven then, [she] never make[s] a decision based on the viewpoint of the message."

[4] Consider, for instance, the case of someone wishing to erect a billboard. If that person applies for a sign permit, the City can only deny the application based on specific, objective criteria—e.g., the proposed billboard is too close to the road, too large in size, too tall, located on a lot with other structures, or located on a lot not zoned commercial/industrial. *See supra* Part I.

a pattern of unlawful favoritism appears, rather than by insisting upon a degree of rigidity that is found in few legal arrangements." *Id.* at 325, 122 S. Ct. at 781. Furthermore, we are reluctant to invalidate an entire legitimately-enacted ordinance absent more of a showing it is as problematic as Granite claims.[5]

We find additional support for our holding in the decisions of other courts. Significantly, the only other Circuit court to directly consider the issue of time limits post-*Thomas* also held that the *Freedman* requirements were inapplicable to a content-neutral permitting scheme:[6]

> [T]he procedural safeguards requirement has little relevance to the present case. Th[at] doctrine comes into play primarily when a State undertakes to shield the public from certain kinds of expression it has labeled offensive. Few cases invoke the requirement for procedural safeguards unless an explicit censorship scheme—which by definition is not content-neutral—is under attack, and the Supreme Court recently has confirmed [in *Thomas*] that the procedural safeguards doctrine is so limited in scope.

---

[5] In one short sentence, the district court termed permit delays a "serious issue" and referenced several news clippings attached to one of the affidavits. The news clippings, however, simply explain that the Mayor of the City decided to improve permit-processing time. Keeping *Thomas*'s admonition in mind about the need to avoid deciding hypothetical claims (and realizing that the district court did not have the benefit of an opinion from this Court addressing billboard cases post-*Thomas*), we note the Mayor's decision to improve administrative service does not necessarily mean a constitutional problem existed.

[6] The First Circuit did not consider the issue of time limits directly, but it did note the automatic issuance of permits negates any concern that "officials could effectively deny permits by dragging their feet." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 25 (1st Cir. 2002). Nothing in our opinion should be construed as saying there is not merit—even wisdom—in incorporating specific time limits into the text of sign ordinances; rather, we simply hold time limits are not *per se* required when the licensing scheme at issue is content-neutral.

*Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1328 (Fed. Cir. 2002)

(upholding a federal regulation not limiting the amount of time for which the

Veterans Administration could consider requests to speak on agency property)

(citations and internal quotation marks omitted). At least two district courts also

reached the same conclusion.[7]

For these reasons, we reverse on this point and hold that the lack of time

limits is constitutionally acceptable. The City's sign ordinance thus remains in

effect, and—since Granite has thus far failed to comply with the applicable

provisions—the City is entitled to summary judgment.

Even if we were to invalidate the sign ordinance in its entirety—which we are

most assuredly not doing—we still would not order the City to allow the erection of

the billboards. The City asserts that other provisions of the zoning ordinance

apply—for instance, provisions relating to safety, wind loading, and building codes.

The district court, however, made no findings regarding these provisions. Thus, we

have no way of knowing whether Granite is in compliance, and we would have to

remand.

---

[7] *E.g., B & B Coastal Enters., Inc. v. Demers*, No. CIV.03-05-P-C, 2003 WL 21730760, at *11 (D. Me. July 25, 2003); *Lamar Adver. Co. v. City of Douglasville*, 254 F. Supp. 2d 1321, 1333-34 (N.D. Ga. 2003). *But see Diener v. Reed*, 232 F. Supp. 2d 362, 378-79 (M.D. Pa. 2002) (reading *Thomas* narrowly and evaluating permit scheme at issue by comparing provisions in challenged ordinance to ordinance upheld in *Thomas*).

B. *Damages and Attorneys' Fees*

Granite is not entitled to actual damages because its as-applied challenge failed. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054 (1978) (stating that "substantial damages should only be awarded to compensate actual injury").

Likewise, Granite is not entitled to nominal damages. Courts must award nominal damages only when certain absolute rights are violated—for instance, the right to procedural due process. *Id.* at 266, 98 S. Ct. at 1053-54. Here, neither Granite's First Amendment rights nor its procedural due process rights were violated. All that occurred was that Granite applied for a sign permit and was denied. Given that we upheld as constitutionally sound the provisions of the sign ordinance that applied to Granite—including the absence of specific time limits—Granite is not entitled to nominal damages.

Finally, Granite is not entitled to attorneys' fees under 42 U.S.C. § 1988. Attorneys' fees are proper only when a civil rights plaintiff qualifies as a "prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S. Ct. 566, 572 (1992). A party prevails by receiving "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12, 113 S. Ct. at 573. Here, the

11

relationship between the parties is unaltered. Granite is no closer to being permitted to erect its billboards than it was when litigation began.[8] Thus, Granite is not a prevailing party, and an award of attorneys' fees would be inappropriate.

## III. CONCLUSION

We affirm in part the result reached by the district court by holding (1) Granite's as-applied challenge fails, (2) the provisions of the sign ordinance detailed *supra* note 1 are unconstitutional but severable, and (3) Granite is not entitled to either damages or attorneys' fees. We reverse with respect to whether the City's sign ordinance must contain specific time limits and hold it need not. Accordingly, the sign ordinance remains in effect, and the City is entitled to summary judgment.

AFFIRMED IN PART and REVERSED IN PART.

---

[8] We realize several minor provisions in the sign ordinance have been altered as a result of Granite's labors. *See supra* note 1. These provisions, however, have no bearing on Granite, and thus their alternation does not serve to confer prevailing party status upon Granite. *See Farrar*, 506 U.S. at 113-14, 113 S. Ct. at 574-75 (explaining that something more than a technical victory is required).