**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOUTHERN OREGON BARTER FAIR,
              *Plaintiff-Appellant,*

v.

JACKSON COUNTY, OREGON; JACKSON
COUNTY BOARD OF COMMISSIONERS;
JACKSON COUNTY SHERIFF'S
DEPARTMENT; RIC HOLT; JACK
WALKER; SUE KUPILLAS; ROBERT
KENNEDY,
              *Defendants,*

and

STATE OF OREGON,
              *Defendant-intervenor-*
              *Appellee.*

No. 02-35560

D.C. No.
CV-96-03067-CO

ORDER

Filed March 24, 2005

Before: Arthur L. Alarcón, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Order;
Dissent by Judge Berzon

## ORDER

Judges Rawlinson and Bybee have voted to deny the petition for rehearing en banc and Judge Alarcón so recommends.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the mat-

ter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing en banc, filed July 21, 2004, is **DENIED.**

---

BERZON, Circuit Judge, with whom PREGERSON, REINHARDT, KOZINSKI, WARDLAW, W. FLETCHER, and PAEZ, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully dissent from the order denying rehearing en banc. The panel holds that a statute governing the issuance of permits for the conduct of events involving First Amendment-protected activity need not contain *any* deadline by which the permitting authorities will decide whether or not the permit will be granted. The result — as the facts underlying this case demonstrate — is to accord governmental authorities unbridled discretion, through official footdragging, effectively to veto the holding of an event protected by the First Amendment. The panel's decision is in square conflict with the very Supreme Court precedent upon which it relies, and will permit administrators to impede parties seeking to engage in First Amendment-protected activity on private property. As the case is both an important one and one in which the panel has seriously misread Supreme Court law, we should have heard it en banc.

1.　My central quarrel with the panel's decision is its fundamental misreading of *Thomas v. Chicago Park District*, 534 U.S. 316 (2002). The panel rests on *Thomas* as the pillar of its reasoning. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1137-39 (9th Cir. 2004). In fact, *Thomas* embraced *two* holdings, not one: The first, upon which the panel relies, is that the specific set of prophylactic protections created in

*Freedman v. Maryland*, 380 U.S. 51 (1965),[1] for *content-based* censorship schemes does not apply to content-neutral permitting schemes. *Thomas*, 534 U.S. at 322-23. The second, construed by the panel as not applying to time-limits issues, is that *content-neutral* schemes must "contain adequate standards to guide the official's decision and render it subject to effective judicial review," so as to avoid their application "in such a manner as to stifle free expression." *Id*. at 323. This case concerns only the second holding. The panel's decision mangles its application.

In *Thomas*, the plaintiff requested "that the park district should in every case in which it denies a permit be required to seek *judicial* review of its own action." *Thomas v. Chi. Park Dist.*, 227 F.3d 921, 926 (7th Cir. 2000) (emphasis added), *aff'd*, 534 U.S. 316. The Court ruled that although such a requirement does apply when the government seeks to ban speech on the basis that it comes within the exceedingly narrow set of circumstances in which prior restraints on speech based on content are permitted, no such special prophylactic rule applies to administrative decisions regarding the issuance of permits under otherwise valid schemes that do not take into account the content of any intended speech. *Thomas*, 534 U.S. at 323.

Here, the question that deserves en banc consideration does *not* concern judicial review,[2] but the timeliness of an *initial* administrative decision on a permit application for speech-

---

[1]In the context of content-based censorship schemes, the *Freedman* set of protections requires that:

> (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (plurality opinion) (citing *Freedman*, 380 U.S. at 58-60).

[2]The panel also rejected the contention that the Oregon Mass Gathering Act is invalid because it lacks a provision for prompt judicial review of permit application denials. *S. Or. Barter Fair*, 372 F.3d at 1138. I have no quarrel with this holding.

related activity. The Oregon Mass Gathering Act ("OMGA"), OR. REV. STAT. §§ 433.735 *et seq.*, requires that citizens planning large events on private property must demonstrate in their application for a permit the ability to comply with a complex set of logistical requirements. Complying with those requirements can involve significant advance planning, purchasing, hiring, and installment of equipment. Yet, the OMGA does not provide for any time limit within which the permitting authorities must respond to a permit request. In the absence of any such limitation, the permitting officials have broad discretion to determine the time interval left to plaintiffs to plan their event at the requested site or, if the permit is denied, make alternate plans. Answering the question whether such an open-ended statute governing speech activity is permissible requires application of *Thomas*'s *second* holding: whether the OMGA "contain[s] adequate standards to guides the official's discretion and render it subject to effective judicial review." *Id.*

Without careful attention, it is easy to read the *Thomas* and *Southern Oregon Barter Fair* requests as one and the same: for a time limit on review of submitted applications. The panel fell prey to this mistake, seriously misunderstanding the difference between *Thomas*'s two, distinct holdings. *See S. Or. Barter Fair*, 372 F.3d at 1138 ("The Act need not include *either* a deadline for consideration by the governing body *or* a provision for prompt judicial review. *See Thomas*, 534 U.S. at 322-23." (emphasis added)).

*Thomas* did not decide that a content-neutral time place, and manner regulation need not include any deadline for administrative review; the ordinance in *Thomas*, indeed, had such a deadline — twenty-eight days. *See* 534 U.S. at 318. Instead, the Court decided only that two *Freedman* requirements — a deadline for *judicial* review of a *censor's* decision, and the requirement that the government must initiate litigation — do not apply to content-neutral schemes. *See id.* at 321 ("Petitioners contend that the Park District, like the Board of

Censors in *Freedman*, must initiate litigation every time it denies a permit and that the ordinance must specify a deadline for judicial review of a challenge to a permit denial. We reject those contentions."). Furthermore, in deciding whether the Chicago Park District regulatory scheme contained "adequate standards to guide [an] official's discretion and render it subject to effective judicial review," *id*. at 323, the Court specifically pointed to the deadline for administrative review — mandating that "the Park District must process applications within 28 days," *id*. at 324 — as among the reasons why the Chicago Park District's scheme does not give "the licensing official . . . unduly broad discretion in determining whether to grant or deny a permit, [creating] a risk that he will favor or disfavor speech based on its content." *Id*. at 323.

2. That the OMGA includes onerous and time-consuming requirements[3] for sponsors of large-scale events, but does not contain a deadline for administrative review, creates the very "risk that [a licensing official] will favor or disfavor speech based on its content," *id*., that *Thomas* posits for imprecise statutory and regulatory permitting schemes. In particular, the OMGA allows administrators to sit on applications until the time before an event is so limited that an applicant will be unable to meet the significant statutory requirements for fire protection, water supply, and so on.

In this case, that risk was well illustrated by the processing of the Fair's OMGA application for its 1996 event. The Fair first requested an application in January 1996. The defendants did not immediately provide an application, explaining that they were in the process of drafting a new ordinance that would require a new application. In April 1996, defendants

---

[3]Rules issued by Oregon's Department of Human Services in accordance with the OMGA demand a permit applicant to meet standards governing water supply, drainage, sewerage facilities, refuse storage and disposal, food and sanitary food service, fire protection, security personnel, and traffic. *See* Or. Admin. R. 333-039-0005 *et seq*.

gave the Fair an application that was identical to the one they had provided the year before. Plaintiff immediately submitted an application, but the defendants did not schedule a hearing on the application until July 22, 1996, more than three months after the Fair submitted the permit and more than five months after the Fair had first applied for a permit application. At the July 22 hearing, one defendant-commissioner, expressing his personal disapproval of the lifestyle, beliefs, and practices of the people who would attend the proposed Fair, argued that the Fair's proposed event had no merit and should not be allowed to proceed. Defendants ultimately reached no decision on the application at that hearing, and rescheduled the hearing for more than one month later on August 27, 1996. Finally, more than eight months after the Fair first requested an application, defendants approved the Fair's application on August 29, 1996.

As the panel noted, "the uncertainty inherent in the 1996 application process was one of the Fair's primary reasons for bringing suit." *S. Or. Barter Fair*, 372 F.3d at 1138. This background obviously provided a strong basis for the Fair's as-applied challenge to the OMGA, which it ultimately won, following a jury trial. More importantly, however, this history demonstrates well that the OMGA's lack of a deadline for administrative review facilitates content-based discrimination. The potential for abuse is precisely why the line of cases culminating in *Thomas* requires that a time, place, and manner restriction contain adequate standards to guide an official's decision and render it subject to effective judicial review.

The availability of injunctive relief, mandamus, or damages under 42 U.S.C. § 1983 is not a substitute for specificity in the statute itself. A central premise of *Thomas* and its predecessors is that case-by-case adjudication is *not* a substitute for " 'narrowly drawn, reasonable and definite standards,' " *Thomas*, 534 U.S. at 324 (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (1992)), that guide a licensor's determination. Post-hoc relief is not a fully adequate

equivalent of the right to speak when and where one chooses to do so. And obtaining injunctive or mandamus relief without clear statutory standards requires proof of illicit motive, difficult under any circumstances and particularly difficult when time is short and full development of the facts through discovery unlikely.

In short, relegating citizens applying for permits for speech-related activity to as-applied challenges is decidedly *not* the law. Instead, the standards governing the issuance of such permits — *including*, as *Thomas* indicates, standards of timeliness — must be spelled out in the ordinance itself. *Id.* at 324-25.

There is no basis for treating unbridled discretion with respect to timing of administrative response to a permit application differently from other kinds of administrative discretion with respect to the issuance of permits, and the panel suggests none. Timing is likely to be of the essence when planning a large event of the kind covered by the OMGA. Administrative delays can interfere not only with a party's ability to comply with the OMGA's complicated logistical requirements, but also stymy effective judicial review. Here, for example, the defendants kept, effectively, stringing the Fair along, making it difficult to obtain judicial review before rather than after the scheduled date of the event.

In addition, the panel erred by not giving particular attention to the need for safeguards against unbridled discretion in the context of this non-traditional time, place, and manner regulation, governing the use of *private* property. Although the government certainly has valid interests in the health and safety of the many people participating in and affected by large events such as the Southern Oregon Barter Fair, those interests are different from, and to some degree narrower than, those at stake when the government is property manager of a public forum. *See Cox v. New Hampshire*, 312 U.S. 569, 574 (1941) ("The authority of a municipality to impose regu-

lations in order to assure the safety and convenience of the people in the use of *public highways* has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend." (emphasis added)). In our own homes and on our own land, our right to have political meetings and other speech-related events without asking the government prior permission is ordinarily absolute. The OMGA is permissible at all only because it covers extremely large gatherings, likely to create sanitary and logistic problems if not well run. In this context, the potential for infringement on core First Amendment activities is at its greatest.

3.   Finally, I note that fear of creating an inter-circuit conflict is no reason to decide this case contrary to *Thomas*. Avoiding a circuit conflict is an important consideration when issues are close. When, as here, there is clear statutory or case law dictating the result, we should decide the case correctly for ourselves. *Cf. Costa v. Desert Palace, Inc.*, 299 F.3d 838, 851-54 (9th Cir. 2002) (en banc) (declining to follow the approach generally used by other circuits with regard to proof of Title VII mixed motive cases, when other circuits had failed to consider superseding statutory language), *unanimously aff'd*, 539 U.S. 90 (2003); *United States v. Gaudin*, 28 F.3d 943, 948-51 (9th Cir. 1994) (en banc) (holding that the materiality of false statements to the government is a question of fact, notwithstanding the contrary view of the eleven other circuits that had considered the issue), *unanimously aff'd*, 515 U.S. 506 (1995).

In this instance, some of the cases in the other circuits that consider seemingly similar questions rely on considerations not here applicable. To the extent others of those cases, like the panel in this case, read *Thomas* as having held that there is no longer any need for clear timeliness standards for the consideration of content-neutral permits affecting speech activities, those cases are wrong, and we should not follow them.

The First Circuit's decision in *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9 (1st Cir. 2002), for example, involves circumstances sufficiently different from those in this case that there would be no conflict were we to hold the OMGA facially invalid for failure to specify any time limit for consideration of permit applications. In *New England Regional Council*, the First Circuit considered a leafletting permit scheme under which "the automatic issuance of permits negate[d] [the] potential concern . . . that officials could effectively deny permits by dragging their feet." *Id.* at 25 n.8. More importantly, the plaintiff's *as-applied* challenge did not specifically attack the lack of an administrative review deadline.

The Tenth Circuit, in *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004), erred as the panel did — by reading *Thomas* as holding that permitting ordinances need not contain time limits when in fact *Thomas* did not so state. *See id.* at 1259. In the course of so ruling, *Utah Animal Rights Coalition* suggested that there is no need for time limits in content-neutral permitting ordinances, as they do not restrain speech during the period of any delay. This analysis entirely misses the reason given in *Thomas* for requiring "[n]arrowly drawn, reasonable and definite standards," *id.* at 324 — to constrain administrative discretion that can serve as a cover for content-based distinctions and result in preventing speech for lack of adequate advance notice. Moreover, the analysis turned in part on the plaintiff's failure in that case to argue that the lack of a deadline for administrative review violated *Thomas*'s second holding. *Id.* at 1260. The plaintiff apparently argued that an administrative review deadline was required under only *Freedman v. Maryland*, not *Thomas*, as it suffered from "confusion on this point of law." *Id.* at 1259. Finally, as in *Granite State Outdoor Advertising, Inc. v. City of St. Petersburg*, 348 F.3d 1278 (11th Cir. 2003), *cert. denied*, 124 S. Ct. 2816 (2004), and *Griffin v. Secretary of Veterans Affairs*, 288 F.3d 1309 (Fed. Cir. 2002), *Utah Animal Rights Coalition* disregarded *Thomas*'s review of the

Chicago Park District permitting ordinance, failing to note that there *was* an administrative review deadline and that the Court considered that deadline in concluding that the standards in the permitting ordinance were sufficiently specific to survive a facial challenge.[4]

In sum, because the panel misread binding Supreme Court precedent by issuing a decision that will allow unbridled administrative discretion and the unconstitutional infringement of First Amendment-protected free speech rights, I respectfully dissent.

---

[4]*Granite State Outdoor Advertising* is particularly worrisome, as the court explicitly decided to await evidence of a pattern of abuse before deciding that the challenged ordinance without a time limit for administrative review was constitutionally inadequate. 348 F.3d at 1282.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.