*792 BIRCH, Circuit Judge,
specially concurring:
I write in concurrence with the majority opinion to clarify a point that I had anticipated would be addressed in this en banc hearing. While the panel opinion in this case, Tanner Advertising Group, L.L.C. v. Fayette County, 411 F.3d 1272 (11th Cir.) (“Tanner"), vacated, 429 F.3d 1012 (11th Cir.2005), is no longer precedential, as noted in the majority opinion at p. 783, that decision opined that:
Prior to [Granite State Outdoor Adver., Inc. v. City of Clearwater] 351 F.3d 1112 (11th Cir.2003) (“Clearwater”) if a ... plaintiff met the Article III minimal requirements for standing under one provision of the ordinance, it was accepted that courts would grant standing for the plaintiff to also make a broad facial challenge to the constitutionality of the Ordinance as a whole. See, e.g., Metromedia[, Inc. v. City of San Diego, 453 U.S. 490, 505 n. 11, 101 S.Ct. 2882, 2891 n. 11, 69 L.Ed.2d 800 (1981)]; Granite State Outdoor Adver. v. City of St. Petersburg, 348 F.3d 1278 (11th Cir.2003) (“St. Petersburg”); Dimmitt v. City of Clearwater, 985 F.2d 1565 (11th Cir.1993); National Adver. Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir.1991) (“National”); Solomon v. City of Gainesville, 763 F.2d 1212 (11th Cir.1985). * * * *
In light of the strong precedent from the Supreme Court and this Circuit concerning the doctrine of overbreadth which preceded the Clearwater decision, we are compelled to follow our “prior precedent” or “earliest case”[1] rule and uphold our decisions preceding Clearwater and disregard the narrow approach to the overbreadth doctrine employed by the Clearwater court.
Tanner, 411 F.3d at 1276-77.
Given that language, albeit expressed in a now vacated opinion of no precedential force, I deem it necessary to take issue with such a conclusion. As I will demonstrate below, Clearwater did not depart from prior precedent and, except to the extent modified by this en banc decision, remains the law of this Circuit. To outline my position on this issue, I will (1) review Supreme Court precedent on the over-breadth doctrine, including those cases cited by the Tanner panel opinion in support of its determination to refuse to follow Clearwater; (2) review Eleventh Circuit precedent on the overbreadth doctrine, including those cases cited by the Tanner panel opinion; and (3) note other jurisprudential considerations which impact my conclusion in this case.
A. Supreme Court Precedent on the Overbreadth Doctrine
In order to have standing to bring a claim, a litigant must satisfy (1) Article Ill’s “case and controversy” requirements, namely that: (a) the litigant suffered an injury in fact that is concrete and particularized; (b) there is a causal connection between the injury and the challenged conduct; and (c) the injury can be redressed by a favorable decision; and (2) certain sub-constitutional or “prudential” doctrines established by courts. See Bennett v. *793 Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997). One of these prudential doctrines is that a litigant may only assert his or her own rights and may not argue claims that could have been asserted by third parties not before the court. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). While the Article III standing requirements constitute an “irreducible constitutional minimum” which cannot be altered, the prudential standards are more malleable and may be relaxed by courts in certain situations. See Bennett, 520 U.S. at 162, 117 S.Ct. at 1161. One exception is the overbreadth doctrine.
The overbreadth doctrine is an exception to the prudential doctrine recited by Allen, which says that a litigant, who has been injured by a statute as it was applied to him, may also challenge the statute facially on First Amendment grounds. See Village of Schaumburg v. Citizens for a Better Env’t, 444 U.S. 620, 634, 100 S.Ct. 826, 834-35, 63 L.Ed.2d 73 (1980). This is because the Court has recognized that individual citizens whose First Amendment rights have been violated may simply refrain from speech rather than engage in the costly endeavor of challenging a statute. See Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2196-97, 156 L.Ed.2d 148 (2003). Accordingly, courts allow a party to make a broad facial challenge to a statutory provision under the overbreadth doctrine to ensure that unconstitutional burdens on speech are eliminated. The overbreadth doctrine, however, does not relieve a litigant of demonstrating, as required by Article III, that he suffered an injury in fact. See Bischoff v. Osceola County, 222 F.3d 874, 884 (11th Cir.2000) (“[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some injury in fact as a result of the defendant’s actions.”) (citing Virginia v. Am. Booksellers Assoc. Inc., 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988)).
While some ambiguity can be read into this last quotation from Bischoff, no Supreme Court case has interpreted the overbreadth doctrine so broadly as the panel did in Tanner. In other words, no Supreme Court case has allowed a litigant to challenge statutory provisions under which it was not injured based on the overbreadth doctrine. For example, in Schaumburg, a litigant claimed that § 22-20(g) of a local ordinance violated the First Amendment after being denied a certain permit pursuant to that code provision. 444 U.S. at 624-25, 100 S.Ct. at 829-30. Under the overbreadth doctrine, the Court allowed the litigant to challenge the statutory provision facially. Id. at 634, 100 S.Ct. 826. In sum, the plaintiff was injured under § 22-20(g) and the Court heard only his challenge to § 22-20(g). The Court did not entertain challenges to other related provisions. Likewise, in Secretary of State v. Joseph H. Munson Co., the State of Maryland had threatened to sue a for-profit company under § 103D of the Maryland Code. 467 U.S. 947, 951, 104 S.Ct. 2839, 2844, 81 L.Ed.2d 786 (1984). Invoking the overbreadth doctrine, the for-profit corporation challenged the facial constitutionality of the statute, which was designed to regulate non-profits. Id. at 956-58, 104 S.Ct. at 2847-48. The Court’s analysis did not venture beyond the overbreadth challenge to § 103D, the provision under which the for-profit was injured. See id. at 970, 104 S.Ct. at 2854. Finally, in American Booksellers Association, the Court allowed a bookstore to mount a facial challenge to Va.Code Ann. § 18.2-391 only after the bookstore had demonstrated an injury, which was the “well-founded fear that the law would be *794 enforced against them.” 484 U.S. at 393, 108 S.Ct. at 643.
In support of its sweeping view of the overbreadth doctrine, the Tanner panel opinion cited City of Littleton v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004), for the proposition that “the Court did not limit the plaintiffs facial standing to the specific provision that rendered the plaintiffs [action] unlawful.” Tanner, 411 F.3d at 1277. Littleton is inapposite because it is not an over-breadth standing case, and the Court granted certiorari to address only whether a licensing scheme met the First Amendment’s requirement of prompt judicial review. Littleton, 541 U.S. at 776, 124 S.Ct. at 2221. As the Tanner panel opinion conceded, “the Court permitted the plaintiff to make a facial challenge without ever even discussing the plaintiffs individual injury.” Tanner, 411 F.3d at 1277. Because the issues of standing and over-breadth were not discussed in Littleton, that case has no bearing on those issues. See Hagans v. Lavine, 415 U.S. 528, 536 n. 5, 94 S.Ct. 1372, 1378 n. 5, 39 L.Ed.2d 577 (1974) (“[When] questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.”); cf. Texas v. Cobb, 532 U.S. 162, 169, 121 S.Ct. 1335, 1341, 149 L.Ed.2d 321 (2001) (“Constitutional rights are not defined by inferences from opinions which did not address the question at issue.”). Littleton did modify the Court’s previous holding in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), regarding “special judicial review rules” for the denial of a business license. Littleton, 541 U.S. at 781-82, 124 S.Ct. at 2224. However, Littleton did not disturb FW/ PBS’s holding that courts must determine whether plaintiffs have standing under every provision that they wish to challenge. See generally id. In FW/PBS, Inc., while the Court concluded that plaintiffs had standing to challenge certain provisions in an ordinance, the Court refused to reach the merits of challenges to other provisions within the same ordinance “because petitioners ha[d] failed to show they have standing to challenge them.” 493 U.S. at 230-31, 110 S.Ct. at 607-08; see also McConnell v. FEC, 540 U.S. 93, 154-60, 224-233, 124 S.Ct. 619, 666-70, 707-12, 157 L.Ed.2d 491 (2003) (allowing challenges, including an overbreadth challenge, to certain provisions in the Bipartisan Campaign Reform Act of 2002, but concluding that plaintiffs lacked standing to challenge other provisions). '
In addition, the Tanner panel opinion cited a footnote in Metromedia, 453 U.S. at 504 n. 11, 101 S.Ct. at 2890 n. 11, for the proposition that standing under one provision suffices for standing under “the Ordinance as a whole.” Tanner, 411 F.3d at 1276. Although the footnote discusses the overbreadth doctrine, the main text of the case recites that the litigant was engaged in both commercial as well as noncommercial expressive speech, and therefore the overbreadth doctrine was inapplicable because the litigant could mount a facial challenge without invoking the doctrine. Metromedia, 453 U.S. at 503-04, 101 S.Ct. at 2890-91. Notwithstanding the fact that Metromedia is a fractured, plurality opinion of dubious precedential value, see Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1262 n. 10 (11th Cir.2005), the case is inapposite to the Tanner panel opinion’s claim that the overbreadth doctrine allows litigants to challenge statutory provisions under which they have not been injured.
Accordingly, in the Supreme Court cases that have addressed the overbreadth doctrine and its relationship to Article III standing, litigants were allowed to mount *795 facial (as opposed to strictly “as applied”) challenges only to statutory provisions under which they had been injured. The Court has not used the overbreadth doctrine to allow litigants to challenge related statutory provisions under which it concluded that the litigants had not been injured.
B. Eleventh Circuit Precedent on the Overbreadth Doctrine
The Eleventh Circuit cases cited by the Tanner panel opinion either (1) support the conclusion in Clearwater or (2) do not stand for the proposition that a litigant may challenge statutory provisions under which he has not been injured. See Cafe Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274, 1278 & nn. 3-5 (11th Cir. 2004) (limiting constitutional analysis under overbreadth doctrine to “Sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51” because plaintiff was allegedly injured under those sections); Solantic, 410 F.3d at 1252-54 (limiting constitutional analysis to “the relevant provisions of the Neptune Beach sign code,” which the City indicated Solantic had violated); St. Petersburg, 348 F.3d at 1280 & n. 2, 1282-83 (limiting the First Amendment inquiry to the several ordinance provisions under which the litigant was injured); Dimmitt, 985 F.2d at 1571 (citing the overbreadth doctrine to allow a litigant to challenge facially Fla.Code §§ 134.008(18), 134.013(a) when the litigant was denied a permit pursuant to that code section); National, 934 F.2d at 285-86 (allowing a litigant to challenge facially municipal code provisions because the litigant “ha[d] a commercial interest in the speech regulated” and remanding to determine whether provisions were severable from entire code); Solomon, 763 F.2d at 1213-15 (finding that the litigant had standing under the overbreadth doctrine to challenge facially Gainesville code § 29-100(b)(2) when the city indicated that it would prosecute the litigant based on his violation of the statute).
To elaborate further, the two circuit opinions cited by the Tanner panel opinion that post-date the decision in Clearwater, and thereby do not implicate the prior precedent rule, are consonant with Clear-water’s holding. Although the opinion in Cafe Erotica, “tak[es] into account other provisions” than those under which the plaintiff was injured, 360 F.3d at 1278, we did not grant the plaintiffs standing to challenge those provisions. Instead, we expressly limited review to the three provisions that the district court focused on because the plaintiffs were injured under those provisions. See id. (“[W]e consider only the constitutionality of Ordinance 99-51 .... [specifically, we consider appel-lees’ facial challenges to sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51.”) (emphasis added). Solantic also specifically limited its review and only considered the entire sign code when deciding whether the unconstitutional sections under which the plaintiff was injured could be severed from the code. 410 F.3d at 1268-69 (concluding that, because “exemptions [were] not severable from the remainder of the ordinance, we [were] therefore required to find the sign code unconstitutional”).
More importantly, several of the cases that pre-date Clearwater, and thereby implicate the prior precedent rule, demonstrate that standing to make a facial challenge to a particular provision under the overbreadth doctrine does not give the plaintiff standing to challenge other sections, or the entire statutory scheme, if the plaintiff was not injured thereunder. For example, in St. Petersburg, we specifically noted that we were not “invalidating] the sign ordinance in its entirety” and that we would not “address hypothetical constitu *796 tional violations in the abstract” which did not affect the plaintiff. See St. Petersburg, 348 F.3d at 1282-83. While there is some language in the opinion which perhaps suggests the panel would have allowed standing to challenge the entire statute,[2] it is more important to look at what the panel did. The plaintiff was denied a permit under § 16-692(e) and was thereby injured under that provision. Id. at 1280. In challenging the statute, the plaintiff argued that § 16 — 692(e) was unconstitutional because there was no time limit on when the municipality had to act on a permit application. Id. at 1281. While we “affirm[ed] without discussion” the district court’s finding that three particular provisions were unconstitutional, see id. at 1280 & n. 1, we found that § 16-692(e) was constitutional, and then expressly disclaimed that we were reviewing or invalidating any other provisions because the district court made no findings of fact that the plaintiff was injured under those provisions. See id. at 1283. Thus, looking at what the St. Petersburg panel actually did and held, our analysis under the over-breadth doctrine was limited to a facial challenge of the permit provision under which the plaintiff was injured.
In Dimmitt, we invalidated both § 134.013(a) (requiring a permit to erect a sign) and § 134.008(18) (exempting display of some flags from permit requirement). 985 F.2d at 1571-73. It is clear, however, that the plaintiff was injured under both sections: He was denied a permit under § 134.013(a) on the grounds that his display was not part of the exemptions stated in § 134.008(18). Id. Thus, Dimmitt supports the position that a litigant should only be allowed to challenge the statutory provisions under which he was injured.
While National also suffers from suggestive language indicating that the litigant had standing to challenge the entire code, closer inspection shows that National does not stand for the sweeping view of overbreadth the Tanner panel opinion espouses. In National, after a cursory finding that a litigant had standing under the overbreadth doctrine to challenge facially certain statutory provisions, our court remanded the case back to the district court to determine whether these provisions were constitutional and then to determine if the unconstitutional provisions, if any, were severable “from the remainder of the sign code.” See 934 F.2d at 286. National never expressly concluded that the litigant had standing to challenge those provisions under which it had not been injured. See generally id.
Accordingly, the Tanner panel opinion’s assertion that Clearwater broke with prior Eleventh Circuit precedent is not supported by the cases the Tanner panel opinion cited. In Clearwater, the panel found that, although the overbreadth doctrine permitted a facial challenge to § 3-1806.-B.l of the Clearwater Code because the plaintiff had been injured under that provision, the plaintiff could not challenge the constitutionality of § 4 of the Code because it had sustained no injury under any provision of that section. 351 F.3d at 1117. Clearwater’s holding that the over-breadth doctrine only allows a facial challenge to the provision under which the litigant has been injured, as required by Article III, is thus consistent with the holdings in Cafe Erotica, Solantic, St. Petersburg, Dimmitt, National, and Solomon. Moreover, Clearwater follows circuit precedent that pre-dates the cases cited by the Tanner panel opinion. See, *797 e.g., FEC v. Lance, 635 F.2d 1132, 1140-41 (5th Cir. Jan. 1981) (en banc) (disallowing overbreadth challenge to various prohibitions within a single section, 2 U.S.C. § 441b, that were not applicable to the plaintiff, and concluding that plaintiff “ha[d] standing to challenge section 441b only as it prohibits [the two activities applicable to the plaintiff]”).
C. Other Jurisprudential Considerations
In addition to finding support in Supreme Court and Eleventh Circuit precedent, the decision in Clearwater is supported by two other jurisprudential considerations.
First, the Article III requirement of an injury in fact is an “irreducible constitutional minimum,” whereas the overbreadth doctrine is an exception to a prudential, court-made standing doctrine. See Bennett, 520 U.S. at 162, 117 S.Ct. at 1161. Because a prudential doctrine cannot be allowed to trump a constitutional requirement, the Tanner panel opinion’s expansion of the overbreadth doctrine, which eviscerates the injury-in-fact requirement, cannot be permitted.[3]
Second, the Tanner panel opinion eviscerates the jurisprudential engagement in severability analysis. The typical procedure for constitutional challenges to a statutory provision is to: (1) test the provision for constitutionality; and (2) if it is found unconstitutional, determine whether the constitutionally offensive provision can be severed from the rest of the statute. See New York v. United States, 505 U.S. 144, 186, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992). Courts engage in severability analysis out of respect for separation of powers, i.e., so that constitutional provisions enacted by the legislature are not overturned needlessly. The Tanner panel opinion, by purporting to expand the purview of the court’s constitutionality analysis to an entire code or ordinance even if the plaintiff was injured under one narrow provision, eliminates the need to engage in the severability analysis as required by New York.
D. Conclusion
In sum, the Tanner panel opinion’s conclusion that the overbreadth doctrine allows a litigant who was only injured under § A-l of a statute also to challenge § A-2 or even all of § A of a statute is incorrect, as is its conclusion that Clearwater represented a departure from prior Eleventh Circuit precedent. While Article III determines which statutory provisions may be challenged (i.e., the ones under which the plaintiff was injured), the overbreadth doctrine determines what arguments the plaintiff can make about those provisions (i.e., “as applied” or facial unconstitutionality).[4]
*798 While society may be helped by increased judicial review of statutes that affect speech, society will not be better served in the long-run under an expansive application of the overbreadth doctrine. Article III injury-in-fact requirements are designed to provide the court with the most vigorous litigant who has the incentive to accurately present the court with the appropriate issues and arguments. A litigant who has not been injured under a particular provision may not have the appropriate incentive or understanding of the provision’s effects to litigate fully those provisions. Allowing such a challenge may result in precedent being established that actually harms society at large.
Moreover, standing is properly regarded as a doctrine of judicial self-restraint. As Justice Powell observed, “[rjelaxation of standing requirements is directly related to the expansion of judicial power.” United States v. Richardson, 418 U.S. 166, 188, 94 S.Ct. 2940, 2952, 41 L.Ed.2d 678 (1974). As the Court has frequently emphasized, any analysis of the concept of “injury” must be based upon “reference to the Art. Ill notion that federal courts may exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process.” Allen, 468 U.S. at 752, 104 S.Ct. at 3325 (internal quotations and citations omitted).
Accordingly, the narrow approach to standing that we described in Clearwater remains the law of this circuit until changed by an en banc opinion of this court.

. "A prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc .... When faced with an intra-circuit split we must apply the 'earliest case' rule, ... a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel.” Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir.2003) (internal quotations and citations omitted).

. For example, the panel expressly disclaims that it is invalidating the ordinance in its entirety, see St. Petersburg, 348 F.3d at 1283, which suggests (at best) that the plaintiff may have had standing to challenge the ordinance in its entirety.

. To be sure, by abrogating the prudential standing limitations, legislative actions and judicial exceptions to prudential limitations (including overbreadth) may enable plaintiffs to sue to the full extent allowed by Article III. See, e.g., Bennett, 520 U.S. at 165, 117 S.Ct. at 1162-63 (concluding that a legislative act expanded standing “to the full extent permitted under Article III”). However, such actions cannot empower plaintiffs to sue beyond the full extent allowed by Article III. Thus, any inquiry into prudential standing should only be undertaken after the limit of a litigant’s Article III standing has been identified.

. Loose and suggestive language has been rather commonplace in this area and has provided enterprising plaintiffs with some fodder to challenge statutory provisions under which they have not suffered an injury. See, e.g., Cafe Erotica, 360 F.3d at 1281 (Even though we considered only challenges to sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51, we concluded that “[b]oth appellees have standing to challenge Ordinance 99-51.”); Dimmitt, 985 F.2d at 1573 (While we only reviewed particular portions of a sign ordinance, we broadly stated that "[w]e must invalidate the sign ordinance as facially un *798 constitutional.”). Compare St. Petersburg, 348 F.3d at 1280 n. 1 (noting that the district court invalidated three specific provisions and "found the remaining text to be constitutionally sound”), with id. at 1281 (“The district court found the absence of time limits required it to grant summary judgment for Granite and invalidate the entire ordinance.”). Given plaintiffs' often creative use, if not misuse, of our precedent and the terms that define the scope of what they may challenge, even the declaration that standing is limited to the specific statutory "provisions” under which there is an injury may not be specific enough. Thus, to state it more explicitly, to satisfy the standing requirements in Article III, when a plaintiff alleges that a "code,” "ordinance,” "statute,” "act,” "provision,” etc. has caused him injury, the plaintiff has the obligation to identify the specific language within these organizational units to which the alleged injury is fairly traceable. The limit of Article III standing (or what the plaintiff may ultimately challenge) should not be framed by the fortuitous placement of this language within any given Roman numeral, topical heading, or other artificial demarcation. Instead, standing must be circumscribed by the specific language alone that the plaintiff alleges to have caused injury. See Lance, 635 F.2d at 1140-41. If the placement of the language is determinative, Article III standing is subject to the whims of legislative organizational structure.
Such a requirement would not apply, of course, to an alleged injury that is based on the absence of particular statutory language, as in an injury traceable to a lack of procedural safeguards. Nevertheless, in that circumstance, the plaintiff still cannot challenge the constitutionality of other statutory language that does not concern procedure if he does not allege a separate injury traceable thereto. See FW/PBS, Inc., 493 U.S. at 230-31, 110 S.Ct. at 607-08. To the extent that courts have improperly characterized such sections or language as "challenged,” that should only mean that those sections are vulnerable to being invalidated in the remedy, or severability, phase.