[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13210

_____

D. C. Docket No. 03-00023-CV-JTC-3

TANNER ADVERTISING GROUP, L.L.C.,

Plaintiff-Appellant,

versus

FAYETTE COUNTY, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 9, 2005)**

Before BARKETT, KRAVITCH and FARRIS[*], Circuit Judges.

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

KRAVITCH, Circuit Judge:

Tanner Advertising Group, L.L.C. ("Tanner") appeals from the district court's denial of its request to permanently enjoin Fayette County, Ga ("Fayette County") from enforcing its Sign Ordinance ("Ordinance"). Tanner challenges the Ordinance on First Amendment grounds and state constitutional grounds. The central issue on appeal is whether Tanner has standing to challenge the constitutionality of the statute as a whole under the overbreadth doctrine. For the following reasons, we conclude that Tanner is entitled to overbreadth standing.

## I. FACTUAL BACKGROUND

Tanner is a Georgia limited liability company in the business of erecting and operating advertising signs to be used for both noncommercial and commercial purposes. Tanner entered into lease agreements with owners of real property in commercial and industrial zoning districts in Fayette County, in order to gain permission from the land-owners to post a sign on each of the properties.

Fayette County's Ordinance regulates the appearance, location, and number of signs within its boundaries. In part, the Ordinance restricts the placement of "off-premise signs." Fayette County defines an off-premise sign as any sign "that advertises a product, service, place, activity, person, institution, business or solicitation which is not carried out on the premises upon which the sign is

2

located."[1]

Section 1-43 of the Ordinance regulates off-premise signs in the following ways. First, only one off-premise sign is permitted per lot. Second, each off-premise sign must comply with the height, area, separation, and setback requirements set forth in the Ordinance.[2] Third, each off-premise sign must be made with a brown background and white lettering only. The Ordinance allows off-premise signs to communicate either a commercial or noncommercial message.

Additionally, the Ordinance allows every lot in a residential area to post one freestanding sign "for the purpose of displaying or expressing noncommercial speech." These signs may not exceed "six (6) square feet in area and three (3) feet in height." These signs also may not "be used to direct the public to a place or event at a location other than the location upon which the sign is posted." Likewise, in nonresidential districts, noncommercial signs are prohibited from directing the public to any place other than where the sign is posted.

Before erecting an off-premise sign, the Ordinance requires that an applicant obtain a permit. To obtain a permit, an applicant must submit a completed

[1]Conversely, an "on-premise sign" is defined as a "sign located on the same premises which the advertised product, service, place, activity, person, institution, business or solicitation is located."

[2]Fayette County limits the size of such signs to no more than "two (2) horizontal feet by two (2) vertical feet in width" and the signs are restricted to "no more than three (3) feet above ground level."

3

application including plans for placement and location of the sign and specification of what message the sign will communicate.

Tanner submitted eight completed applications to Fayette County for permits to erect the signs. Fayette County defined Tanner's proposed signs as "off-premise signs" and denied all of the applications because the proposals did not "comply with § 1-43 of [the] Sign Ord[inance]."

In response to Fayette County's denials of the applications, Tanner filed a complaint in the district court arguing that the Ordinance is facially unconstitutional and unconstitutional as applied to it. Tanner subsequently moved to permanently enjoin Fayette County's enforcement of the Ordinance. Following a hearing, the district court denied Tanner's request for a permanent injunction, dismissed Tanner's federal constitutional claims, and dismissed without prejudice Tanner's claims based on the Georgia Constitution. The court found that Tanner had standing to sue only under § 1-43 of the Ordinance and that § 1-43 of the Ordinance was content-neutral and a valid time, place, and manner restriction.

## II. DISCUSSION

*A. Standard of Review*

We review the constitutionality of ordinances *de novo*. *Café Erotica v. St. Johns County*, 360 F.3d 1274, 1282 (2004); *Joel v. City of Orlando*, 232 F.3d

4

1353, 1357 (11th Cir. 2000).

*B. Standing*

1. Background

The doctrine of standing involves both a "case or controversy" requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional "prudential" element. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997). The Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992), articulated the Article III requirements for standing as follows: (1) the plaintiff must demonstrate that it had suffered or is immediately likely to suffer a concrete and particularized injury in fact; (2) the plaintiff must establish a causal connection between the injury and the alleged conduct; and (3) the plaintiff must prove that there is a likelihood that a favorable judicial decision will redress the injury. *See also Bennett*, 520 U.S. at 167.

Even if these constitutional minimums have been met, judicially created prudential limitations may defeat a party's standing to maintain a suit. *Id.* at 162. One prudential consideration suggests that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197,

5

2205, 45 L.Ed.2d 343 (1975).  This prudential principle provides courts with "the assurance that the most effective advocate of the rights at issue is present to champion them."  *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978).

The Supreme Court, however, has recognized some circumstances in which the prohibition on asserting third parties' legal interests may be relaxed.  One specific circumstance occurs when  "there is some genuine obstacle [that causes] . . . the third party's absence from court . . . and the party who is in court becomes by default the right's best available proponent."  *Singleton v.  Wulff*, 428 U.S. 106, 116, 96 S.Ct. 2868, 2875, 49 L.Ed.2d 826 (1976).

This situation is particularly acute in the free speech context, where individual private citizens who are denied the opportunity to express themselves under an unconstitutional ordinance often find the barriers to legal redress to be too high.

> Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech . . . harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas.

*Virginia v. Hicks*, 539 U.S. 113, 119, 123 S.Ct. 2191, 2196, 156 L.Ed.2d 148 (2003).  *See also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129, 112

6

S.Ct. 2395, 2400-01, 120 L.Ed.2d 101 (1992) ("the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court").

Thus, the Supreme Court created the overbreadth doctrine to protect the rights of others not before the court by allowing third parties to bring a facial challenge to an unconstitutional ordinance. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505 n.11, 101 S.Ct. 2882, 2891 n.11, 69 L.Ed.2d 800 (1981); *Thornhill v. Alabama*, 310 U.S. 88, 97-98, 60 S.Ct. 736, 741-42, 84 L.Ed.1093 (1940). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society . . ." *Sec'y of State of Md. v. Joseph H. Munson. Co.*, 467 U.S. 947, 958, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984).

2. Tanner's Standing Rights

In determining that Tanner did not have standing to challenge the entire ordinance under the overbreadth doctrine, the district court relied heavily on this Circuit's previous decision in *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112 (11th Cir. 2003) ("*Clearwater*"). The *Clearwater* court stated that a plaintiff cannot gain standing under the overbreadth doctrine to assert the rights of third parties not before the court until the plaintiff has fully satisfied

7

all three constitutional standing requirements. *Id.* at 1116. The court conceded that the plaintiff had suffered an actual injury as to one section of the code, and granted overbreadth standing under that section. *Id.* at 1117. Nonetheless, the court concluded that the injury was not sufficient to allow it to grant overbreadth standing to the plaintiff to challenge the rest of the Ordinance. *Id.* Thus, the *Clearwater* panel took the position that a plaintiff challenging the facial constitutionality of a city's sign ordinance under the overbreadth doctrine can only challenge portions of the ordinance under which the plaintiff itself was actually injured. *Id.* at 1116-17.

Here, the district court found that Tanner had personally suffered an Article III injury-in-fact only as to § 1-43. The court followed the reasoning set forth in *Clearwater* and determined that Tanner had standing to challenge only that section as applied to it, and under the overbreadth doctrine, as applied to non-commercial speech. Tanner argues that it is entitled to challenge every unconstitutional aspect of the Ordinance under the overbreadth doctrine. Tanner notes that the overbreadth doctrine was designed to protect the freedom of speech, which is a right of paramount importance under the Constitution.

As the *Clearwater* court stated, before a plaintiff can launch an overbreadth challenge, the plaintiff must suffer an injury in fact. *See Clearwater*, 351 F.3d at

1116 (citing *Virginia v. Am. Booksellers Ass'n., Inc.*, 484 U.S. 383, 392-93, 108 S.Ct. 636, 642-43, 98 L.Ed.2d 782 (1988); *Village of Schaumburg*, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980); *Bischoff v. Osceola County*, 222 F.3d 874, 884 (11th Cir. 2000)). The *Clearwater* court overlooked our past Eleventh Circuit precedent, however, when it assumed that under the overbreadth doctrine, a plaintiff can only challenge the one section under which it suffered a concrete injury. 351 F.3d at 1117-19.

Prior to *Clearwater*, if a claim was brought challenging the constitutionality of a sign ordinance, and the plaintiff met the Article III minimal requirements for standing under one provision of the ordinance, it was accepted that courts would grant standing for the plaintiff to also make a broad facial challenge to the constitutionality of the Ordinance as a whole. *See, e.g.*, *Metromedia*, 453 U.S. at 505 n.11; *Granite State Outdoor Adver. v. City of St. Petersburg*, 348 F.3d 1278 (11th Cir. 2003) ("*St. Petersburg*"); *Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993); *National Adver. Co. v. City of Fort Lauderdale*, 934 F.2d 283 (11th Cir. 1991) ("*National*"); *Solomon v. City of Gainesville*, 763 F.2d 1212 (11th Cir. 1985). Even when a statute was constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court, then overbreadth standing was proper. *See Forsyth County*, 505 U.S. at 129-30 ("It is

9

well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation even though its application in the case under consideration may be constitutionally unobjectionable."). Thus, under prior precedent, once a plaintiff could demonstrate that it suffered an injury in fact as to one provision of a statute governing speech, the plaintiff gained standing to challenge the statute as a whole.

Specifically, in *Metromedia,* the Supreme Court recognized that parties with a commercial interest in speech may raise a facial challenge to an ordinance and raise the noncommercial speech interests of third parties. 453 U.S. 490, 505 n. 11. Additionally, in *National*, a panel of this Court held that an outdoor advertising company had standing to assert claims for the alleged violations of First Amendment rights on behalf of itself and its advertisers. 934 F.2d at 285. In *St. Petersburg*, another panel of this Court assumed, without discussion, that the plaintiff sign company had standing to facially challenge the city's sign ordinance. 348 F.3d at 1280. Finally, in *Solomon*, this Court granted the plaintiff standing to facially challenge an ordinance on the ground that it might substantially abridge the First Amendment Rights of parties not before the Court. 763 F.2d at 1214-15.[3]

---

[3]The only case not directly in line with this precedent is *Messer v. City of Douglasville*, 975 F.2d 1505 (11th Cir. 1992), in which a panel in this Circuit concluded that the plaintiff did not have standing to challenge the variance powers of the city board of appeals because the plaintiff made no showing of individual injury in relation to the appeals process. The Court did,

In light of the strong precedent from the Supreme Court and this Circuit concerning the doctrine of overbreadth which preceded the *Clearwater* decision, we are compelled to follow our "prior precedent" or "earliest case" rule and uphold our decisions preceding *Clearwater* and disregard the narrow approach to the overbreadth doctrine employed by the *Clearwater* court. The prior precedent rule dictates that:

> A prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc. . . . When faced with an intra-circuit split we must apply the "earliest case" rule, . . . a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel.

*Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) (citations and quotation marks omitted). Because this Court sitting *en banc* has not overruled *St. Petersburg*, *Dimmitt*, *National*, and *Solomon*, and because they came before the *Clearwater* decision, we hold that Tanner has standing to make a facial challenge to the Ordinance as a whole.

Additionally, we note that the Supreme Court and Eleventh Circuit cases that came after *Clearwater* reaffirm this Circuit's previous authority concerning the overbreadth doctrine. *See e.g.*, *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). In *Littleton*, the Supreme Court

---

however, allow the plaintiff to make a blanket facial challenge to the rest of the Ordinance as a whole without regard to the plaintiff's individual injury for the remaining subsections.

granted the plaintiff overbreadth standing to facially challenge the judicial review provisions of the Littleton "adult business" licensing scheme even though the plaintiff brought a lawsuit before even attempting to obtain a license under the city's ordinance. *Id.* at 2222, 2226. Furthermore, the Court did not limit the plaintiff's facial standing to the specific provision that rendered the plaintiff's use unlawful under the city's regulation. In fact, the Court permitted the plaintiff to make a facial challenge without ever even discussing the plaintiff's individual injury. *Id.* Similarly, in *Café Erotica*, a panel of this Court determined that two adult businesses had standing to challenge the County's sign ordinance as applied and on its face. 360 F.3d at 1281. This court concluded that the adult businesses could facially challenge the ordinance under the overbreadth doctrine because it placed unbridled discretion in the hands of county officials. *Id.*

Finally, we note that in *Solantic, LLC v. City of Neptune Beach*, __ F.3d __, 2005 WL 1262094, *5-16 (11th Cir. 2005) this Court afforded the plaintiff standing to make a broad challenge to all unconstitutional elements of the sign code even though the plaintiff had not suffered an injury from all the provisions in the code. Thus, we conclude that because Tanner suffered an injury in fact as to section 1-43 of the statute, it has standing to challenge the statute as a whole.

*C. Remaining Issues on Appeal*

Tanner also appealed the district court's findings that § 1-43 of the Ordinance was not overbroad and is a content-neutral time, place, and manner restriction. In light of our conclusion that Tanner should be granted overbreadth standing to challenge the Ordinance as a whole, these issues should be reexamined on remand taking into account § 1-43's interplay with the other provisions in the statute.

Additionally, Tanner appeals the district court's decision not to exercise supplemental jurisdiction over Tanner's state law claims. Tanner claims that the Ordinance violates provisions of the Georgia Constitution, in addition to the Federal Constitution. A district court may exercise jurisdiction over all state law claims which "derive from a common nucleus of operative fact" as a substantial federal claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724-25, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1563-64 (11th Cir. 1994). The district court may, however, decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367; *Palmer*, 22 F.3d at 1568. On remand, this issue will depend on the district court's disposition of the other issues. Thus, we decline to address these other issues

raised on appeal.

## III. CONCLUSION

Accordingly, the district court's denial of Tanner's standing to challenge the Ordinance as a whole is REVERSED. We REMAND the case to the district court for proceedings consistent with this opinion.