Bill LOCKRIDGE d/b/a Loa Outdoor Advertising d/b/a Lockridge Outdoor Advertising Agency, Plaintiff,

v.

CITY OF OLDSMAR, FLORIDA, Defendant.

No. 8:03CV1246T27EAJ.

United States District Court, M.D. Florida, Tampa Division.

Sept. 27, 2005.

Brooks C. Rathet, Reznicsek & Fraser, P.A., Ponte Vedra Beach, FL, E. Adam Webb, William E. Porter, Webb & Porter, L.L.C., Atlanta, GA, for Plaintiff.

Cristine M. Russell, William David Brinton, Jacksonville, FL, Shauna F. Morris, Frazer Hubbard Brandt, Trask & Yacavone, Dunedin, FL, for Defendant.

### ORDER

WHITTEMORE, District Judge.

**BEFORE THE COURT** are Plaintiff's Motion for Partial Summary Judgment (Dkt.69), Plaintiff's Memorandum in Support (Dkt.70), Defendant's Opposition (Dkt.78), Defendant's Motion for Summary Judgment (Dkt.83), Defendant's Memorandum in Support (Dkt.84), and Plaintiff's Opposition (Dkt.92). Upon consideration, the Court having conducted a hearing on August 17, 2005, and being otherwise fully advised in the premises, Plaintiff's Motion for Partial Summary Judgment (Dkt.69) is **GRANTED**, and Defendant's Motion for Summary Judgment (Dkt.83) is **DENIED**.

### Factual Background

On May 29, 2003, Plaintiff, Bill Lockridge d/b/a LOA Outdoor Advertising d/b/a Lockridge Outdoor Advertising Agency, filed applications with Defendant, City of Oldsmar, for permits for the erection of nine commercial billboards. (Dkt.84, App.41). On May 30, 2003, the applications were denied based upon § 13.3.3(3) of Defendant's Sign Regulations ("ordinance") set forth in Article XIII of the City's Land Development Code ("LDC"). (Dkt.84, App.9, Ex. 9).

As of the date of Plaintiff's applications, Article II of the LDC defined a billboard as: "A non-point-of-sale sign which advertises a business, organization, event, person, place or thing, unless such sign is more specifically defined herein." (Dkt.84, App.10, p. 2). Section 13.3.3(3) of the ordinance provided: "Prohibited signs: Off-premise signs, including billboard signs, except where specifically provided for elsewhere in this Article." (Dkt.1, Ex. 1, pp. 4–5). Section 13.1.2(3) provided: "It is the intention of this Article... To prohibit all signs not expressly permitted." (Dkt.1, Ex. 1, p. 2). Pursuant to § 13.1.1, the purposes of the ordinance are:

> "to encourage the effective use of signs as a means of communication in the City; to maintain and enhance the aesthetic environment and the City's ability to attract and maintain sources of economic development; to improve pedestrian and traffic safety; to minimize the possible adverse effect of signs on nearby public and private property; to ensure that signs are constructed, installed and maintained in a safe and satisfactory manner, and to enable the fair and consistent enforcement of this Article."

(Dkt.1, Ex. 1, p. 2).

On June 16, 2003, Plaintiff filed this suit against Defendant, challenging the rejection of his applications and the constitutionality of the ordinance. (Dkt.1, Compl.). Plaintiff seeks injunctive relief in the form of an order declaring the ordinance unconstitutional and void and directing the grant of his applications and erection of the requested billboards. (Dkt.1).

Plaintiff also seeks monetary damages associated with the denial of his applications based on the allegedly unconstitutional ordinance.[1] (Dkt.1).

On June 15, 2004, Defendant repealed and amended portions of its LDC, including portions of Article II and Article XIII (Ordinance Nos.2004–09 and 2004–10). (Dkt.31, Exs.1–2). Plaintiff challenges only the constitutionality of the former ordinance in this action. The new ordinance is not before this Court.[2]

### *Applicable Standards*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The Court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R.Civ.P. 56.

### *Discussion*

The Court must consider threshold jurisdictional issues before analyzing Plaintiff's constitutional claims. *See Coral*

*Springs Street Sys. v. City of Sunrise,* 371 F.3d 1320, 1327 (11th Cir.2004).

### I. Standing

To meet the constitutional requirements for standing, a plaintiff must show that: (1) it suffered or is immediately likely to suffer an injury in fact; (2) a causal connection exists between the injury and the alleged conduct; and (3) there is a likelihood that a favorable judicial decision will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Tanner Adver. Group, L.L.C. v. Fayette County, Ga.,* 411 F.3d 1272, 1274 (11th Cir. 2005). Injury in fact means the plaintiff has suffered or is likely to suffer an injury that amounts to "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent" rather than "conjectural or hypothetical" and that affects the plaintiff in a "personal and individual way." *Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130 (*quotations and citations omitted); see also Tanner Adver. Group, L.L.C.,* 411 F.3d at 1274. Causal connection between the injury and the conduct complained of means that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (*quotations and citations omitted* ). Lastly, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (*quotations and citations omitted* ).

The Court finds that Plaintiff has met the constitutional requirements for

---

**1.** Since filing suit, Plaintiff has withdrawn four of his nine applications. (Dkt.82). Plaintiff seeks only monetary damages corresponding to the withdrawn applications, not injunctive relief. (Dkt.82).

**2.** Plaintiff did not apply for permits under the new ordinance. The Court notes, however, that like the former ordinance, the new ordinance prohibits billboards. (Dkt.31, Ex. 2, p. 15).

standing. The record establishes that Plaintiff has suffered an injury in fact, namely the loss of income from the billboards he was not permitted to erect. *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. The injury is causally connected to the allegedly unconstitutional ordinance upon which the application denials were based. *See Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Further, there is a likelihood that a favorable judicial decision would redress the injury by allowing the billboards to be erected and money damages to be awarded. *See Lujan*, 504 U.S. at 560–561, 112 S.Ct. 2130.

Defendant does not dispute Plaintiff's standing to challenge the specific provision(s) of the ordinance upon which his applications were denied (§ 13.3.3(3)). (Dkt.84, p. 12). Defendant does, however, dispute that Plaintiff has standing to challenge the entire ordinance on its face.[3] (Dkt.84, pp. 13–14).

 Generally, a plaintiff who meets the constitutional requirements of standing may only assert its own legal rights and interests, as opposed to the legal rights and interests of third parties. *Tanner Adver. Group, L.L.C.*, 411 F.3d at 1274. However, an exception to this limitation on standing exists under the "overbreadth doctrine," where facial challenges to ordinances are permitted for the benefit of litigants and third parties. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 504, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Tanner Adver. Group, L.L.C.*, 411 F.3d at 1275–76. Under this doctrine, a party who meets the standing requirements is permitted to challenge the constitutionality of an ordinance as it was applied, as well as to facially challenge the entire ordinance. *Metromedia, Inc.*, 453 U.S. at 504, 101 S.Ct. 2882; *Tanner Adver. Group, L.L.C.*, 411 F.3d at 1277.

Defendant relies on *Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112 (11th Cir.2003), in support of its argument that Plaintiff lacks standing to assert a facial challenge to the ordinance under the overbreadth doctrine. However, this argument ignores the holding in *Tanner Advertising*, in which the Eleventh Circuit applied the "prior precedent" rule and disregarded the narrow approach to the overbreadth doctrine employed in *Granite State v. Clearwater*. In *Tanner Advertising*, the court expressly concluded that because the plaintiff suffered an injury in fact as to a particular provision of an ordinance (and otherwise met the standing requirements), the plaintiff had standing to challenge the ordinance in its entirety.[4] *Tanner Adver.*

---

**3.** In support of his argument that Plaintiff lacks standing to assert a facial challenge, Defendant argues that because Plaintiff's applications were for commercial signs, he lacks a *substantial interest in noncommercial* speech to warrant standing under the overbreadth doctrine. This argument lacks merit. Only two cases within the Eleventh Circuit have addressed this issue. In *National Adver. Co. v. City of Miami*, 287 F.Supp.2d 1349 (S.D.Fla.2003), the district court refused to allow Plaintiff to assert a facial challenge to an ordinance under the overbreadth doctrine, but the court of appeals reversed the case in its entirety. In addition, in *Action Outdoor Adver. JV. L.L.C. v. Town of Shalimar, Fla.*, 2005 WL 1690591, *7 (N.D.Fla. Mar.29, 2005), the court noted: "Eleventh Circuit

precedent has not addressed whether a plaintiff must demonstrate a 'substantial interest' in noncommercial speech in order to raise a facial challenge under the overbreadth doctrine, much less expressly required a plaintiff to do so." Further, in *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1571 (11th Cir. 1993), the court expressly noted that where a law governs both commercial and noncommercial speech, a litigant with only a commercial speech interest may qualify by virtue of the overbreadth doctrine to assert the speech rights of third parties with noncommercial speech interests.

**4.** *Tanner Advertising* relied on Supreme Court and Eleventh Circuit precedent prior and sub-

*Group, L.L.C.,* 411 F.3d at 1277. Under *Tanner Advertising,* Plaintiff has met the constitutional requirements and has standing to challenge the ordinance both facially and as applied.

## II. Mootness

Defendant asserts that this case is moot based on its repeal of the ordinance. Plaintiff asserts that the case is not moot based on the doctrine of voluntary cessation and his acquisition of vested rights in the billboards he applied for.

▮▮▮▮ A case is moot when circumstances subsequent to the challenged conduct preclude a court from awarding a plaintiff meaningful relief. *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998). "[I]f a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs,* 371 F.3d at 1328. A case can become moot based on a change in circumstances or a change in the law. *Id.* Whether repeal or amendment of a law moots a case depends on what relief a plaintiff seeks.

## A. Claim for Injunctive Relief[5]

### 1. Voluntary Cessation

▮▮▮▮ A challenge to the constitutionality of an ordinance which seeks de-claratory or injunctive relief is generally mooted by repeal or amendment of the ordinance. *Crown Media, LLC v. Gwinnett County, Ga.,* 380 F.3d 1317, 1324 (11th Cir.2004); *Coral Springs,* 371 F.3d at 1329. Voluntary cessation of a challenged practice will not moot a case, however, unless there is no "substantial likelihood that the challenged statutory language will be reenacted." *Coral Springs,* 371 F.3d at 1329. A case will be moot only where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *National Adver. Co.,* 402 F.3d at 1333 *(quotations omitted)* ("mere speculation" that a law will be reenacted is not enough to preclude a finding of mootness).

▮▮▮▮ A city can establish its intention not to reenact a law by disavowing an intention to do so, by showing that it acted promptly in repealing or amending the old law, or by establishing that the new law was the result of "substantial and conscientious deliberation" and had been "consistently applied" since its enactment. *Coral Springs,* 371 F.3d at 1330, 1332–33 *(quoting Jews for Jesus, Inc. v. Hillsborough County Aviation Authority,* 162 F.3d 627, 629). Further, governmental entities are given "considerably more leeway" than private parties in the presumption that they are unlikely to reenact repealed laws. *Id.* at 1328–29.

sequent to *Granite State v. Clearwater. See e.g., City of Littleton, Colo. v. Z.J. Gifts D–4, L.L.C.,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) (plaintiff was permitted to assert a facial challenge to an ordinance without discussion of individualized injury); *Metromedia, Inc.,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (although plaintiff met minimal requirements for standing under one provision of a sign ordinance, plaintiff was granted standing to make a broad facial challenge to the entire ordinance); *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250 (11th Cir.2005) (plaintiff had standing to challenge all of the unconstitutional elements of a sign code even though it had not suffered an injury from all of the provisions); *Dimmitt,* 985 F.2d 1565 (11th Cir.1993) (plaintiff was permitted to assert a facial challenge to a sign and flag ordinance on behalf of third parties who might "conceivably" be harmed by unconstitutional provisions, regardless of whether plaintiff suffered harm itself).

5. The Magistrate Judge analyzed the mootness issue extensively in her Report and Recommendation on Plaintiff's Motion for Preliminary Injunction (Dkt.74), which was adopted by this Court (Dkt.109).

Defendant has asserted that it has no intention of reenacting the former ordinance.[6] (Dkt.58, p. 173, Dkt.74, p. 7, ¶ 8, Dkt.109). As a governmental entity, it is entitled to the presumption that it is unlikely to do so. *See Coral Springs,* 371 F.3d at 1328–29. Further, there is undisputed record evidence that Defendant began "looking at the sign regulations" and determined that the ordinance "needed to be updated" in April, 2003, at least one month before Plaintiff filed his applications and two months before suit was filed.[7] (Dkt.58, p. 151–52, Dkt.109, p. 2, Dkt.31, Exs.1–9). It cannot be disputed that the amendment process began well before Plaintiff's suit was filed and was not in response to this lawsuit. The fact that the new ordinance took over one year to enact suggests Defendant engaged in "substantial and conscientious deliberation," which strengthens the presumption that the former ordinance will not be reenacted. Plaintiff has offered no evidence of a substantial likelihood that the former ordinance will be reenacted. On this basis, Defendant's voluntary cessation of the former ordinance renders moot Plaintiff's claim for injunctive relief.

## 2. Vested Rights

Even if the voluntary cessation doctrine would otherwise moot his claim, Plaintiff asserts that the case is not moot because he had vested rights in the billboards at the time he submitted his applications and prior to the repeal of the ordinance. The Eleventh Circuit has recognized that "a party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." *Crown Media, LLC,* 380 F.3d at 1325 (*citing Coral Springs,* 371 F.3d at 1333).

Whether the right to a permit is vested is a question of state law. *Coral Springs,* 371 F.3d at 1333. Pursuant to Florida law, "vested rights can be created—thus creating an enforceable entitlement in the face of subsequent changes in the law—only in two circumstances," namely where there are conditions of "equitable estoppel" or where there is a "clear showing of bad faith."[8] *Id.* at 1334.

Bad faith has been found where a city's conduct is an "arbitrary," "hasty," "blatant" or "obvious" attempt to "single out" an applicant to avoid granting a permit or facing a legal challenge. *Id.* at 1336–38. Specifically, a city will be found to have acted in bad faith where it deliberately and arbitrarily withholds a permit until after a change in the law. *Id.* at 1336 (*citing Aiken v. E.B. Davis, Inc.,* 106 Fla. 675, 143 So. 658 (1932) and *Dade County v. Jason,* 278 So.2d 311, 311–12 (Fla.App. 1973)). A city will also be found to have acted in bath faith where it waits to amend a law until after it has been sued and a court has ordered it to grant an application it denied based on the unconstitutional law. *Id.* at 1336–37 1336 (*citing Harris v. State ex. rel. Wester,* 159 Fla. 195, 31 So.2d 264 (1947)). Although bad faith may be evi-

6. Bruce Haddock, City Manager, testified at the hearing on Plaintiff's motion for preliminary injunction that the City had no intention to enforce the former ordinance. (Dkt.58, p. 173).

7. Greg Scoville, the City Director of the Department of Community Development, testified at the hearing on Plaintiff's motion for preliminary injunction that he was instructed to "review the codes and become familiar with the codes" in January, 2003. (Dkt.58, p. 151–52, Dkt.109, p. 2).

8. Plaintiff does not assert that he acquired vested rights in the billboards as a result of equitable estoppel.

denced by amendment or repeal of a challenged law *after* suit is filed, the timing of the amendment or repeal is not conclusive. *Id.* at 1337.

In this case, it is undisputed that the new ordinance was not enacted until one year after Plaintiff filed suit. However, contrary to Plaintiff's arguments, the repeal and amendment of the ordinance following Plaintiff's initiation of this lawsuit does not itself amount to bad faith. *See Coral Springs,* 371 F.3d at 1337. There is no evidence that Defendant denied Plaintiff's applications or amended the ordinance in a blatant or obvious attempt to single Plaintiff out. *See id.* In fact, the record suggests the contrary is true.

 Defendant began the amendment process in April, 2003, before Plaintiff's applications were filed, and thereafter engaged in "substantial and conscientious deliberation," ultimately repealing and amending the ordinance one year later. (Dkt.58, p. 151–52, Dkt.109, p. 2, Dkt.31, Exs.1–9). *See Coral Springs,* 371 F.3d at 1330, 1332–33. A period of one year for repeal and amendment of the ordinance is reasonable given the complex nature and breadth of the sign ordinance. Even if Defendant had expedited the amendment process, it seems unlikely that it would have been able to draft a comprehensive, complex and constitutionally sound sign ordinance within the six week period between the denial of Plaintiff's applications and the filing of this lawsuit.[9]

It appears that Defendant did exactly what it should have done. Defendant is required by law to maintain and enforce sign regulations. *See* FLA. STAT., § 163.3202(2)(f). Historically, the ordinance had been amended numerous times

and it is reasonable to have expected that changes to the regulations would need to be made. (Dkt.84, App.8). There is no evidence that Defendant amended the ordinance in a deliberate attempt to avoid granting Plaintiff's applications or facing this legal challenge. In fact, Defendant maintains that Plaintiff's applications would have been denied under the former ordinance *and* the new one, so amendments to the ordinance would not have affected Plaintiff, regardless of when they were made.

Plaintiff has failed to make a "clear showing of bad faith" by Defendant. *See Coral Springs,* 371 F.3d at 1334. Accordingly, Plaintiff has no vested rights in the billboards so as to save his claim for injunctive relief.

**B. Claim for Monetary Damages**

 The Eleventh Circuit has recognized that claims for monetary damages associated with a challenged law are not mooted by repeal or amendment of the law. *Crown Media, LLC,* 380 F.3d at 1325; *Granite State Outdoor Adver., Inc.,* 351 F.3d at 1119; *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1519 (11th Cir. 1992). Money damages stemming from the application of an unconstitutional law may provide a plaintiff with meaningful relief, and in those circumstances, the claim for damages is not moot. *See Jews for Jesus, Inc.,* 162 F.3d at 629. Accordingly, Defendant's repeal or amendment of the ordinance does not moot Plaintiff's claim for damages.

In sum, although Plaintiff's claim for injunctive relief is moot, he can proceed

---

9. The Magistrate Judge noted in her Report and Recommendation on Plaintiff's Motion for Preliminary Injunction that: "Enacting an ordinance is not accomplished overnight. The new ordinance is thirty-three pages in length (not counting the definitions section and the pictorial aids) and contains several pages of whereas clauses describing the City's purposes behind regulating signs." (Dkt.74).

with his constitutional challenge and his claim for monetary damages.

## III. First Amendment Analysis

Plaintiff alleges that Defendant's ordinance banning billboards was unconstitutional because it: (1) favored commercial over noncommercial speech, and (2) constituted an impermissible content-based restriction on speech. (Dkt.1).

### A. Favoring Commercial over Noncommercial Speech

 Commercial speech and noncommercial speech are treated differently for purposes of First Amendment analysis. *Metromedia. Inc.*, 453 U.S. at 501–02, 101 S.Ct. 2882; *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Commercial speech may be regulated, whereas noncommercial speech may not. *Southlake Prop. Assocs. v. City of Morrow. Ga.*, 112 F.3d 1114, 1116 (11th Cir.1997). Regulations favoring commercial speech over noncommercial speech or otherwise placing restrictions on noncommercial speech are subject to strict scrutiny by the Courts. *Id.*; *Café Erotica of Fla., Inc. v. St. John's County*, 360 F.3d 1274, 1286–87 (11th Cir. 2004).

Plaintiff argues that the ordinance impermissibly favors commercial speech over noncommercial speech. Specifically, Plaintiff alleges that the ordinance banned all off-premises signs, whether commercial or noncommercial, while allowing on-site signs. Because non commercial messages do not ordinarily pertain to the site on which they are posted, Plaintiff argues that the ordinance's ban on off-site signs restricts noncommercial speech more than commercial speech.

 Plaintiff's argument is not persuasive. The Eleventh Circuit has held that "noncommercial messages are inherently onsite," and "[t]he definition of billboard as an offsite advertising sign does not include noncommercial speech...." *Coral Springs*, 371 F.3d at 1344; *Southlake Prop. Assocs.*, 112 F.3d at 1118–19. Because the ordinance defined a billboard as a "non-point-of-sale" or "off-premise" sign, only off-site billboards, not on-site ones, were prohibited by the ordinance. Defendant's ordinance does not favor commercial over noncommercial speech because the prohibitions on billboards did not apply to noncommercial signs. *See Coral Springs*, 371 F.3d at 1344 ("according to the law of this Circuit, noncommercial messages are by definition onsite signs and therefore [are] certainly not treated unfavorably compared with other signs").

### B. Content–Neutral or Content–Based Restrictions on Speech

 The first step in evaluating the constitutionality of an ordinance regulating or restricting speech is the determination of whether the ordinance's provisions are content neutral or content based. *Solantic, LLC*, 410 F.3d at 1258 (*citations omitted*). If the ordinance is content neutral, intermediate scrutiny is applied. *Id.* If the ordinance is content based, strict scrutiny applies. *Id.*; *see also Central Hudson Gas & Elec. Corp.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of ideas or views expressed are content based. On the other hand, a content-neutral ordinance is one that places no restrictions on either a particular viewpoint or any subject matter that may be discussed." *Solantic, LLC*, 410 F.3d at 1259 (*citations and quotations omitted*).

 Plaintiff alleges that the ordinance was content based and impermissibly regulated noncommercial speech by exempting certain signs with noncommercial content

from all regulation, exempting some commercial content from permitting requirements, and otherwise imposing restrictions or prohibitions on other noncommercial signs. Specifically, Plaintiff points to provisions exempting certain signs from all regulation, including exemptions for temporary holiday decorations (§ 13.3.1(5)), public or government agency signs (§ 13.3.1(2)), noncommercial memorials (§ 13.3.1(3)), and noncommercial works of fine art (§ 13.3.1(4)). Plaintiff also points to provisions exempting certain signs from permit requirements but requiring permits for others, including nameplate and street identification signs (§ 13.3.2(4)), memorials and cornerstones on buildings (§ 13.3.1(6)), and personal message signs (§ 13.4.2(b)). Further, Plaintiff points to provisions of the ordinance that were plainly content based, including a provision allowing government flags without prior approval while all other flags are deemed banners subject to regulation (§ 13.4.2(c)).

Plaintiff's recitation of content-based provisions within the ordinance is exhaustive and need not be repeated here. The challenged provisions in this case are similar to the many ordinances examined by the Eleventh Circuit in countless sign ordinance cases. *See e.g., Solantic, LLC,* 410 F.3d at 1263–1266; *Café Erotica of Fla., Inc.,* 360 F.3d at 1286–87; *Dimmitt,* 985 F.2d at 1569–70. Because the ordinance exempted and regulated certain signs based on the messages they conveyed, the ordinance imposed content-based restrictions on speech. *See Solantic, LLC,* 410 F.3d at 1266.

## C. Application of Strict Scrutiny

▪▪▪▪▪▪ "A content-based restriction on speech must be necessary to serve a compelling state interest and narrowly drawn to achieve that end." *Solantic, LLC,* 410 F.3d at 1267 (*quotations and citations omitted*). The stated purposes of the ordinance, which are set forth in § 13.1.1, were to encourage the effective use of signs as a means of communication in the City, to maintain and enhance the aesthetic environment, to improve pedestrian and traffic safety, to minimize the possible adverse effect of signs on nearby public and private property, to ensure that signs are constructed, installed and maintained in a safe and satisfactory manner, and to enable the fair and consistent enforcement of the ordinance. Defendant contends that its ordinance was no greater a restraint on speech than was necessary to further the interests set forth in § 13.1.1.

Although a number of these interests are somewhat vague, the U.S. Supreme Court and Eleventh Circuit have recognized that governments have a substantial interest in traffic safety and aesthetics. *Metromedia, Inc.,* 453 U.S. at 507–08, 101 S.Ct. 2882; *Southlake Prop. Assocs.,* 112 F.3d at 1116 (11th Cir.1997). These governmental interests have been found to justify content-neutral restrictions on speech. *See e.g., Metromedia, Inc.,* 453 U.S. at 507–12, 101 S.Ct. 2882; *Southlake Prop. Assocs.,* 112 F.3d at 1116; *Messer v. City of Douglasville,* 975 F.2d 1505, 1509–11 (11th Cir.1992); *Don's Porta Signs, Inc. v. City of Clearwater,* 829 F.2d 1051, 1053 (11th Cir.1987), *cert. denied,* 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988). However, even these substantial interests, coupled with the others set forth in § 13.1.1, are not sufficiently compelling to meet the exacting strict scrutiny standard. *See Metromedia, Inc.,* 453 U.S. at 517–20, 101 S.Ct. 2882; *Solantic, LLC,* 410 F.3d at 1267; *Dimmitt,* 985 F.2d at 1569–70.

Even if the stated purposes of the ordinance constituted compelling governmental interests, those interests were not necessarily served by the ordinance's distinction between banned, restricted and exempted signs. On this record, Defendant has not shown how its interests justified content-

based exemptions from regulations, permit requirements, or time, place, manner or size limitations. Accordingly, the ordinance's regulations distinguishing banned signs and exempted signs were not narrowly tailored to achieve the stated purposes.

■ "[O]nly the most extraordinary circumstances will justify regulation of protected expression based upon its content." *Dimmitt*, 985 F.2d at 1570. Extraordinary circumstances are not present here, and Defendant's content-based ordinance cannot withstand strict scrutiny. Plaintiff has established that to the extent his applications for billboards were denied based on unconstitutional provisions of the ordinance, he is entitled to monetary damages.

Based on this finding, it is not necessary for the Court to reach Plaintiff's numerous other arguments in support of his motion, including whether the ordinance met the *Central Hudson* test for restrictions on commercial speech,[10] whether the ordinance granted unbridled discretion in city officials without precise and objective standards, whether the ordinance constituted a prior restraint on speech without core procedural safeguards, or whether the ordinance was deficient in providing time limits on permitting or appeals. Plaintiff's arguments may in fact have merit. However, in light of Defendant's repeal of the ordinance and enactment of a new ordinance, further constitutional scrutiny is unnecessary. *See Board of Trustees of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) ("It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily ....").

Further, because the former ordinance has been repealed, any attempt at severing its unconstitutional clauses would be futile and essentially advisory in nature. *See Coral Springs*, 371 F.3d at 1347. Plaintiff has effectively obtained a favorable ruling on his challenge to the ordinance, which will serve to award him the full measure of monetary damages available.

Accordingly, it is

**ORDERED AND ADJUDGED** that

1) Plaintiff's Motion for Partial Summary Judgment (Dkt.69) is **GRANTED**.

2) Defendant's Motion for Summary Judgment (Dkt.83) is **DENIED**.

---

**10.** In *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 563–66, 100 S.Ct. 2343, the Court established a four part test for determining the validity of restrictions on commercial speech. The test provides that content-neutral restrictions on protected speech are constitutional only if the speech concerns lawful activity and is not misleading and the restrictions serve a substantial governmental interest, the restrictions directly advance that interest, and the restrictions be no more restrictive than necessary to achieve the stated goal. *Id.* at 563–66, 100 S.Ct. 2343.