[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-10746
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 2, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00186-CV-2

ALTAMAHA RIVERKEEPER, INC.,
JANE FRASER FULCHER,

Plaintiffs-Appellants,

versus

U.S. ARMY CORPS OF ENGINEERS,
LT. GENERAL CARL A. STROCK,
U.S. Army Corps of Engineers,
COLONEL MARK S. HELD,
U.S. Army Corps of Engineers,
Savannah District,

Defendants-Appellees,

MARY GEARON,
ROBERT FISHER,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 2, 2009)

Before BIRCH and PRYOR, Circuit Judges and STROM,[*] District Judge.

PER CURIAM:

This case involves a dispute between Altamaha Riverkeeper, Inc. and Jane Fraser Fulcher (collectively, "Appellants") and the United States Army Corps of Engineers and others ("the Corps") over authorizations issued by the Corps that would allow the filling of wetlands located on Sea Island, Georgia. The Appellants appeal two orders from the district court – the first order denying their motion to supplement the administrative record and the second granting the Corps' motion to dismiss the case as moot. As for the first order, the Appellants argue that supplementation of the record is appropriate because the Corps acted in bad faith. As for the second, the Appellants contend that the case remains a live one because of a disagreement between Georgia and the Corps regarding the Corps' issuance of a general permit authorizing minor discharges of dredged or fill materials into U.S. waters. Because we conclude that this suit is moot, we lack jurisdiction to review

_____

[*] Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

the denial of the motion to supplement the administrative record. Accordingly, we AFFIRM.

## I. BACKGROUND

Before we recount the facts underlying the issues in this appeal, we briefly sketch the statutory and regulatory framework regarding the issuance of permits by the Corps under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.

A. Statutory and Regulatory Framework

The CWA is designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Towards that end, the CWA prohibits the discharge of any pollutant, including dredged or fill material, into navigable waters unless authorized by a CWA permit. 33 U.S.C § 1311(a). The Corps is charged with issuing such permits pursuant to 33 U.S.C. § 1344; 33 C.F.R. § 323.6(a). The Corps issues two main types of permits for dredge and fill activities: individual permits and general permits. See 33 C.F.R. § 323.2(g), (h). Individual permits are issued on a case-by-case basis and general permits, or nationwide permits ("NWPs"), are issued "on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if . . . the activities in such category are similar in nature . . . and will

3

have only minimal cumulative adverse effect on the environment."  33 U.S.C. §

1344(e)(1); 33 C.F.R. § 323.2(g).  NWPs are "designed to regulate with little, if

any, delay or paperwork certain activities having minimal impacts."  33 C.F.R. §

330.1(b).  NWP 18 is a general permit that covers minor discharges of dredge or

fill materials into U.S. waters.

Under the regulations applicable to nationwide permits, the Corps may

modify an NWP, but only to further condition or restrict its applicability.  See 33

C.F.R. § 330.1(d).  In this case, the Corps' regional office in Savannah, Georgia

(with jurisdiction over Sea Island) placed such a condition on NWP 18 which

prohibited its utilization in "tidal waters."[1]  The condition is known as Regional

Condition #30 ("RC 30").

B.  Case History

The district court has already provided a detailed rendition of the facts

underlying the issues in this case in its orders of 27 October 2006 and 21 June

2007.  R1-29, 38.  Accordingly, we need only summarize those facts specifically

germane to the issues before us on appeal.

On 30 January 2006, Mary Gearon ("Gearon") and Robert Fisher ("Fisher")

---

[1] "Tidal waters" are defined as "waters that rise and fall in a predictable and measurable rhythm or cycle due to the gravitational pulls of the moon and sun.  Tidal waters end where the rise and fall of the water surface can no longer be practically measured in a predictable rhythm due to masking by hydrologic, wind, or other effects."  33 C.F.R. § 328.3(f).

4

applied to the Corps for authorization to fill existing wetlands on their respective Sea Island properties.[2] R1-29 at 3. Gearon and Fisher hired a private environmental firm, Sligh Environmental Consultants, Inc. ("Sligh") to file the applications on their behalf. The applications specifically stated that the proposed project site was not located in tidal waters. Id. at 3-4; Administrative Record ("AR") at 123, 247. The Corps conducted a desktop review of the applications and issued Gearon and Fisher the requested permits on 9 March and 6 March 2006, respectively. AR at 100; 223.

Fulcher, a Sea Island resident, contacted the Corps on 21 March 2006 and asked them to conduct a field study of Gearon and Fisher's properties to ensure that the subject wetlands were not tidal. AR at 87. The Corps complied and dispatched Mark Padgett ("Padgett"), a project manager, to both sites. Padgett concluded that the properties were not tidally influenced and verified the information contained in Gearon and Fisher's initial applications. AR at 85. Shortly thereafter, Donald Stack, Appellant's counsel, wrote the Corps and reiterated Fulcher's concerns about the properties in question. AR 77-79. In response, the Corps conferred with an employee of the Georgia Department of

---

[2] Gearon and Fisher were defendants in the action before the district court but were dismissed from the case pursuant to the parties' agreement at a settlement conference on 11 October 2007. R2-52.

Natural Resources, Coastal Resources Division, who also had visited the sites and confirmed that the wetlands were freshwater and not tidal. AR at 74. In addition, the Corps required Gearon and Fisher to "measure the tidal range . . . on the boundaries of the two properties during the next spring tide" and threatened revocation of the permits if the measurements were not made. AR at 62. The measurements were made and, once again, it was determined that the wetlands at issue were not subject to tidal fluctuations. AR at 43-45.

Over the next few months, the Appellants continued to send the Corps additional information in support of their contention that the wetlands were tidal. The Corps considered the information, which included video excerpts and findings and reports from two consultants, but again concluded that the wetlands were not tidal. Accordingly, the Corps refused to revoke the NWP 18 permits issued to Gearon and Fisher. AR at 10-12. On 23 August 2006, Gearon and Fisher began filling the wetlands on their project sites and the Appellants filed suit the next day and asked the court for a preliminary injunction. R1-1 at 1.

In their motion for a preliminary injunction, the Appellants claimed, among other things, that the Corps' characterization of the wetlands at issue as non-tidal was arbitrary and capricious and in conflict with their own regulatory scheme. The Appellants contended that RC 30 specifically prohibited the issuance of NWP 18

6

permits in tidal waters and, therefore, the Corps' conduct was essentially in violation of its own regulations. R1-29 at 9-10. We also note that at this point in the litigation, the Appellants urged the district court to close the administrative record as of the issuance of the permits on 6 and 9 March 2006. R1-29 at 9 n.5. The court declined the invitation and decided instead that the administrative record properly encompassed all of the information contained in the certified administrative record submitted by the Corps on 6 October 2006. R1-29 at 10-11 n.6. The district court denied the motion for a preliminary injunction.

After filing suit, the Appellants continued to gather information in support of their position that the wetlands at issue were tidal in nature. On 29 December 2006, the Appellants reversed course and petitioned the district court to supplement the record with information gathered after their complaint was filed. R1-31. The district court denied their request and found that they had failed to make the requisite showing of bad faith by the Corps which would justify consideration of material outside of the record. R1-38 at 8.

On 12 March 2007, the Corps announced the reissuance of all existing NWPs with a few modifications. R2-42, Exh. A at 1. Then on 3 May 2007, the Corps' South Atlantic Regional Commander approved the Savannah District's new regional conditions. The adoption of these new regional conditions eliminated RC

30 as of 3 May 2007. Id. at 2. Accordingly, NWP 18 permits were no longer prohibited in tidal waters. Shortly thereafter, the Corps filed a motion to dismiss the case as moot because RC 30 had been removed from NWP 18 in the Savannah District. The district court granted the motion and this appeal followed.

## II. DISCUSSION

We review a district court's denial of a motion to supplement the administrative record for abuse of discretion. See Preserve Endangered Areas of Cobb's History, Inc. (PEACH) v. United States Army Corps of Eng'rs, 87 F.3d 1242, 1246-47 (11th Cir. 1996). Questions of mootness are reviewed de novo. Tanner Adver. Group v. Fayette County, GA 451 F.3d 777, 784 (11th Cir. 2006) (en banc). Because issues of mootness affect our jurisdiction to review the merits of an appeal, we first consider whether this suit is moot.

The Appellants contend that the district court erred in granting the Corps' motion because, although RC 30 has been eliminated, Georgia's Coastal Resources Division ("CRD") has since informed the Corps of its objection to the use of NWPs in certain estuarine areas lying within a tide elevation range of 5.6 feet above mean tide level and below. R2-44 at Exh. G. The Corps counters that RC 30 was the original basis for the lawsuit and that because RC 30 has been eliminated, the case is moot. We agree with the Corps and conclude that the

8

district court did not err in granting its motion to dismiss.

We addressed the issue of mootness in Dupree v. Palmer, 284 F.3d 1234, 1236-37 (11th Cir. 2002) (per curiam). In Dupree, we reiterated our holding "that the case or controversy requirement of the Constitution requires that moot cases be dismissed; in a moot case, there is no longer the vitality and interest among the parties that our adversary system of justice requires." Id. (quotation marks and citation omitted). We also underscored the Supreme Court's admonition that the "burden of demonstrating mootness is a heavy one." Id. at 1237 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383 (1979). Nevertheless, as the district court correctly noted, jurisdiction may abate and an action may become moot when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. (alterations omitted).

In this case, the Appellants charged the Corps with issuing NWPs in contravention of RC 30. The Appellants argue that the Corps' decision to authorize development of the wetlands at issue was arbitrary and capricious in light of RC 30's prohibition of the use of NWPs in tidal waters. We agree with the district court's determination that "even if [the Appellants] could establish that the

Corps' decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . based upon the existence of tidal waters," the Corps need only reissue another certificate under the current NWP 18 which is free of RC 30's constraints. R2-54 at 6-7. The Appellant' reliance on CRD's notice of objection is unavailing. Georgia is not a party to these proceedings and its 7 May 2007 letter to the Corps postdates the original complaint by over eight months. Whereas CRD's objections may form the basis for a separate controversy, they do not form a basis for this one.[3]

### III. CONCLUSION

The Appellants appeal the district court's denial of their motion to supplement the administrative record and court's grant of the Corps' motion to dismiss. Because we agree with the district court and conclude that the elimination of RC 30 renders the case moot, we do not have jurisdiction to review the denial of the motion to supplement the administrative record. Accordingly, we AFFIRM.

AFFIRMED.

---

[3] Given our present determination, we do not reach the Appellant's arguments against the application of the doctrine of prudential mootness.